UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JANIE LOPEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:07-CV-169-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Janie Lopez seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Lopez did not consent to the jurisdiction of the United States Magistrate Judge. Pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand the Commissioner's decision.

**I.  Discussion**

Lopez claims the Administrative Law Judge (ALJ) failed to resolve conflicts between hearing testimony offered by the vocational expert and information in the Dictionary of

Occupational Titles (DOT).[1] She argues that the ALJ therefore failed to carry the Commissioner's burden of showing that there were a substantial number of jobs in the national economy that she was capable of performing.

The Commissioner employs a five-step sequential inquiry to determine whether the claimant meets the definition of "disabled," as that term is defined in the Social Security Act. 20 C.F.R. § 404.1520(a) (2007). Under the sequential inquiry, the ALJ determines whether the applicant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*. The claimant bears the burden of proof on the first four steps of the inquiry. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999); 20 C.F.R. § 404.1520. Once it is determined at the fourth step of the sequential evaluation process that the claimant cannot perform his past work, the burden shifts to the Commissioner. The ALJ's determination at step five is at issue in this case.

At the fifth step of the sequential evaluation process, the ALJ must show that, considering the claimant's residual functional capacity, age, education, and past work experience, he can perform other work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing 20 C.F.R.§ 404.1520(f)). The Commissioner must identify the particular types of

---

[1] The DOT, published by the United States Department of Labor, provides an extensive listing of jobs existing in the national economy. For each listed job, the DOT indicates the specific tasks and responsibilities of that job and provides strength, education, and vocational preparation requirements. *See* http://www.oalj.dol. gov/libdot.htm (last visited Feb. 22, 2008).

work the claimant can perform. 20 C.F.R. § 404.1545(a). Any work the Commissioner determines the claimant can perform must exist in significant numbers in the national economy – either in the region in which the claimant lives or in several regions in the nation. 20 C.F.R. § 404.1561. According to Social Security Ruling 00-4p, the ALJ relies primarily on the DOT for information about the requirements of jobs in the national economy. *See* SSR 00-4p, 1996 WL 1898704, at *2. The Ruling further directs, however, that the ALJ may also use information from a vocational expert and may consult a vocational expert during the administrative hearing. *Id.*; *see also* 20 C.F.R. § 404.1566(e) (the ALJ may rely upon the expertise of a vocational expert to determine whether the claimant's work skills can be used in other occupations and in identifying the specific occupations in which they may be used).

According to Ruling 00-4p, information from vocational experts "generally should be consistent with the occupational information supplied by the DOT." *Id.* at *2. In situations in which there is "an apparent unresolved conflict" between the two, the ALJ is required to elicit a reasonable explanation for the conflict before relying on the vocational expert's testimony. *Id.* "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id.* at *3. The ALJ must resolve a conflict by determining whether there is a reasonable basis for relying on the testimony from the vocational expert rather than from the occupational information in the DOT. *Id.*

In this case the ALJ determined that despite severe impairments, Lopez retained the ability to perform light work that would allow for a less than moderate concentration deficit

3

and that would not involve overhead job duties or repetitive use of the hands. (Tr. 23.) As is customary, the ALJ posed a hypothetical question to the vocational expert in which he incorporated Lopez' demographic information and functional capabilities and asked whether such an individual would be capable of performing any jobs in the national economy. (Tr. 325.) Specifically, the ALJ asked the vocational expert whether there were any jobs in the national economy an individual such as Lopez could perform if that individual shared Lopez' demographic characteristics, had a concentration deficit, was capable of only light work, could not work overhead, and could not engage in repetitive use of the hands. (Tr. 325-26.)

The vocational expert identified the jobs of machine tender, with 44,000 jobs in the national economy; folding machine operator, with 50,000 jobs in the national economy; and towel rolling machine operator, with 31,000 jobs in the national economy, all of which he characterized as light in exertional level. (Tr. 326.) The ALJ noted in his decision that the jobs the vocational expert identified were light in exertional level and in compliance with his hypothetical question and with the definitions in the DOT. (Tr. 23.) He accepted the vocational expert's testimony, determined that Lopez could work in the identified jobs, and found that she was therefore not disabled. (Tr. 23-24.)

As Lopez argues, the vocational expert's testimony conflicts with information in the DOT. Lopez' attorney asked the vocational expert with what frequency an individual would use his hands while working in the identified jobs, and the vocational expert testified that all three jobs required only occasional use of the hands. *Id.* In response to further questioning,

4

the vocational expert testified that the "main duties" of the jobs were to monitor the machine to ensure that it is operating properly, and if it is not operating properly, turn the machine off and notify someone that repair is needed. (Tr. 327.)

According to the DOT, however, all three of the jobs the vocational expert identified involve frequent/repetitive use of the hands and require more than merely monitoring a machine. The DOT describes the tasks of a towel rolling machine operator as follows:

> Tends machine that winds washed, damp, or ironed roller towels into rolls preparatory to ironing or packaging: Wraps end of towel around metal rod and inserts ends of rod into slots in machine. Swings down hinged tension gate until it latches to put tension on towel. Pushes and pulls hand-operated clutch bar to start and stop machine. Inspects towel for stains and holes as it is being wound onto roll. Secures end of wound towel with tape. Lifts rolled towel from machine. May tend machine that unrolls and folds towels.

*See* Dictionary of Occupational Titles, Service Occupations, 361.685-014, http://www.oalj.dol.gov/LIBOT.HTM#DEFINITIONS (last visited March 4, 2008). The information in the DOT demonstrates that the job of towel rolling machine operator requires more than occasional use of the hands. The DOT likewise indicates that the job of folding machine operator requires more than occasional use of the hands. According to the DOT, a folding machine operator is required to position garments in heated dye on the bed of a machine or insert the edges of a garment through a folding device and guide the folded edges between heated pressing rollers. *See id.* at Processing Occupations, 583.685-042.

The vocational expert did not indicate what type of machine tender job he believed Lopez could perform, and both Lopez and the Commissioner point out that the DOT includes a number of jobs with the description "machine tender" in their title. In fact, the court

located a number of jobs described as "machine tender" in the DOT that are characterized as medium and heavy work. For example, the jobs of laundry machine tender, conveyer tender, and draw-frame tender are performed at the medium exertional level. *See id*. at Processing Occupations, 589.685-066; Miscellaneous Occupations, 921.685-026; and Machine Trade Occupations, 680.685-074. The jobs of picker tender and dresser tender are described as "machine tender" jobs and are performed at the heavy exertional level. *See id.* at Machine Trade Occupations, 690.685-074 & 681.682-010. On the other hand, the job of loom-winder tender is performed at the light exertional level. However, the job requires frequent/repetitive use of the hands. It requires the worker to position yarn packages on a machine creel and thread yarn ends through other implements, straighten and remove jammed yarn pieces, replace depleted yarn packages, strip yarn from rejected quills by hand, and place rejected or depleted quills in a feed tray. *See id.* at Machine Trade Occupations, 681.685-062.

The Commissioner concedes in his brief that the DOT classifies some of the jobs the vocational expert identified as medium or heavy in exertional level and that some of them require frequent reaching and handling. He contends, however, that the vocational expert did not testify that Lopez could perform "these types of jobs" and that the jobs the vocational expert identified required only occasional use of the hands. Citing *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000), the Commissioner argues that the fact that the DOT contains examples of "these jobs at a higher exertional level with frequent reaching and handling" does not mean the vocational expert's testimony is inconsistent with the DOT. Pointing to

6

Ruling 00-4p, he argues that the DOT lists the maximum requirements of occupations as generally performed rather than the range of requirements of a particular job as it is performed in specific settings.

The authorities the Commissioner cites do not support his argument. In *Carey*, the court addressed a situation involving what was characterized as an "implied or indirect conflict" between the vocational expert's testimony and information in the DOT. *Carey*, 230 F.3d at 146-47. In that case the claimant's left arm had been amputated and the ALJ had determined that he could perform limited light work that involved using only his dominant arm. *Id*. at 140. Based on testimony from a vocational expert, the ALJ determined that the claimant could perform the jobs of cashier and ticket seller. *Id*. at 141. The claimant claimed the ALJ erred in accepting the vocational expert's testimony because the DOT indicated that the identified jobs required handling and fingering for between one-third and two-thirds of the day as well as finger and manual dexterity. *Id*. at 145. The court rejected the claimant's arguments. The court determined that there was no actual conflict between the information in the DOT and the vocational expert's testimony because the DOT did not contain a requirement of bilateral fingering, ability, or dexterity and because the vocational expert had specifically testified that the identified jobs could be performed with the use of only one arm and hand. *Id*. at 146. Because the conflict at issue was only an implied or indirect conflict, the court followed other circuit precedent and held that an ALJ may rely on the vocational expert's testimony in cases in which there is an implied or indirect conflict and the record reflects an adequate basis for doing so. *Id.* at 146.

The court distinguished the type of conflict in *Carey* with those it characterized as "direct or obvious." *Id*. at 145-46. A direct or obvious conflict may arise when the vocational expert's testimony regarding the exertional or skill level of a particular job is facially different from that indicated in the DOT or when the vocational expert's testimony creates a conflict between the ALJ's determination regarding the claimant's residual functional capacity and the description of the jobs in the DOT. *Id.* at 146. The court in *Carey* held that an erroneous characterization of a job's exertional requirements would call into question the reliability of the vocational expert's testimony and that an unexplained discrepancy between the ALJ's residual functional capacity and the definition of the identified jobs in the DOT would necessitate remand. *Id*. at 147. Both situations exist in this case.

In regard to the job of machine tender, there is a facial conflict with the ALJ's determination that Lopez was limited to light work because the machine tender jobs in the DOT are generally defined as jobs performed at the medium or heavy exertional level. Although the court located one job performed at the light exertional level, that of loom-winder tender, the job requires frequent/repetitive use of the hands and is therefore inconsistent with the ALJ's determination that Lopez could not work in jobs requiring repetitive use of the hands. The jobs of towel rolling machine operator and folding machine operator are also inconsistent with the ALJ's determination because they require frequent/repetitive use of the hands.

The situation in this case is similar to that presented in *Baty v. Barnhart*, 512 F. Supp.

2d 881, 893-94 (W.D. Tex. 2007). In *Baty* the claimant suffered a marked limitation in her ability to follow detailed instructions, yet according to the DOT, the jobs identified by the vocational expert required the ability to follow detailed instructions. *Id*. at 892. In this case, the vocational expert testified that the identified jobs would require only occasional use of the hands and that they were performed at the light exertional level despite contrary information in the DOT. As in *Baty*, the claimant's counsel recognized a possible conflict and raised the issue at the hearing by questioning the vocational expert. *See Baty*, 512 F. Supp. 2d at 892; *compare Carey*, 230 F. 3d at 146-47 (the claimant's counsel did not raise the issue at the hearing).[2] Likewise, as in *Baty*, the ALJ in this case failed to exercise his responsibility to resolve the conflict. *See id.* at 893-94 (citing *Romine v. Barnhart,* 454 F. Supp. 2d 623, 630-31 (E.D. Tex. 2006) & SSR 00-4p).

Ruling 00-4p places an "affirmative responsibility" upon the ALJ to make an inquiry into whether there are conflicts between the vocational expert's testimony and information in the DOT and, in situations in which a conflict exists, to obtain a reasonable explanation for the apparent conflict and to explain the resolution of the conflict in his decision. SSR 00-4p, 1996 WL 1898704, at *3. Had the ALJ in this case attempted to resolve the conflict between the hearing testimony and the DOT, the vocational expert might have identified which particular light machine tender and machine operator jobs he believed would require

---

[2] The court in *Carey* acknowledged that the DOT does not address every work situation and that "all kinds of implicit conflicts are possible." *Id.* at 146. The court directed that a claimant "should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Id*. at 146-47. Such a situation is not present in this case.

9

only occasional use of the hands. The ALJ did not, however, fulfill his responsibility and the conflicts between the vocational expert's testimony and information in the DOT remain. Remand is therefore required. *See Carey*, 230 F.3d at 147; *Baty*, 512 F. Supp. 2d at 894.

## II.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Lopez' case for further administrative proceedings.

## III.   Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   March 27, 2008.

*[signature]*
NANCY M. KOENIG
United States Magistrate Judge